UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEREMY DE JONG,<br><br>                        Plaintiff,<br>     v.<br><br>GREAT WOLF RESORTS, INC., d.b.a.<br>GREAT WOLF LODGE,<br><br>                        Defendant. | CASE NO. 19-5354 RJB<br><br>ORDER ON DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM |

       This matter comes before the Court on the Defendant Great Wolf Resorts, Inc.'s ("Great Wolf") Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim. Dkt. 9. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

       In this diversity case, the Plaintiff claims that Great Wolf terminated his employment in violation of public policy under Washington law. Dkt. 1-1. Great Wolf (who asserts that the Plaintiff improperly names it as the Defendant, and not Plaintiff's employer, Great Lakes Services, LLC), moves to dismiss the case, arguing that the Plaintiff fails to allege a clear mandate of public policy, or a causal connection to his public-policy linked conduct, or employer misconduct, as is necessary under Washington law. Dkt. 9. For the reasons provided below, the

motion (Dkt. 9) should be granted without prejudice and Plaintiff should be given leave to amend his Complaint, if he wishes.

## I.     FACTS AND PROCEDURAL HISTORY

### A. FACTS

The following facts are from the Plaintiff's Complaint and are presumed true for the purposes of this motion.

The Plaintiff was hired to work at Great Wolf, a hotel and inside water park, on October 25, 2017, as the Director of Engineering. Dkt. 1-1, at 8. Prior to the events that give rise to this action, he alleges that he met or exceeded performance goals and received only positive performance reviews. *Id.*, at 7-8.

The Complaint asserts that on January 23, 2018, the Plaintiff reported to Great Wolf management that a co-worker, Marilyn Milani, the Director of Rooms, "wrote various graffiti on an interior wall and then destroyed it." Dkt. 1-1, at 9. He did so by text message to Human Resources Manager Tawni Houk and included pictures, which appear in the Complaint. *Id.,* at 9-10. The picture is of a wall with writing on it and portions of the drywall torn way. *Id.,* at 10. There are wall supports and insulation visible. *Id.* The next day, Milani emailed the Plaintiff, "stating that she had begun destructively tearing the wall down in housekeeping via her pack ritual but did not plan on encountering insulation and metal." *Id*. The Complaint maintains that she then asked the Plaintiff to "schedule someone to remove the wall." *Id.* The Plaintiff asserts that he felt "her actions posed the potential for safety risks," and reported Milani's conduct a second time, this time to the General Manager, Nadine Miracle. *Id.*

The Complaint alleges that in retaliation for the Plaintiff's reports, on January 26, 2018, Milani reported to human resources that the Plaintiff "objectified women." Dkt. 1-1, at 11. He

asserts that when he pointed out that the timing of her complaint was suspicious, Miracle and Houk stated that due to the nature of Milani's claims, they would not treat the report as retaliatory. *Id.*

The Complaint alleges that when he was not disciplined as a result of Milani's report, Milani began a rumor that he was having an affair with a co-worker, Herbert. Dkt. 1-1, at 11. The Plaintiff asserts that he did not have the affair. *Id.* Milani is alleged to have then "ran an unauthorized audit through the workplace computer system on Plaintiff [and Herbert]" and gave his personal contact information to Herbert's husband. *Id.* The Plaintiff asserts that Milani continued to defame and harass him on social media and through her friends at work. *Id.,* at 11-12. Plaintiff states that Milani was increasingly hostile to him, would not communicate with him, and made it very difficult to do his job due to the interrelated nature of their duties. *Id.,* at 12. The Plaintiff reported Milani's behavior, but he asserts that General Manager Miracle indicated that she disagreed that any such behavior was occurring. *Id.* In March of 2018, Milani was discharged. Dkt. 1-1, at 14.

The Complaint alleges that the Plaintiff's performance evaluation for April 2018 indicated that he "consistently meets" goals and work expectations and that his overall performance was "strong contributor." Dkt. 1-1, at 14.

In early June 2018, Plaintiff and a few other employees headed to Seattle to participate in a work-related program. Dkt. 1-1, at 15. The Plaintiff alleges that he left with Ms. Herbert, but that after they left, they received a text message from General Manager Miracle that they were to wait on the side of the road for her. *Id.* Plaintiff asserts that Miracle forced him to ride with her. *Id.* When asked why, the Plaintiff maintains that Miracle told him, "boys and girls should not ride alone in cares together." *Id.,* at 16.

Both Ms. Herbert and the Plaintiff filed complaints with the human resources regarding this episode. Dkt. 1-1, at 16. On June 28, 2018, the Plaintiff asserts that he asked Human Resources Manager Houk about the status of his complaint. *Id.* He maintains that she told him that Bryan Robinson of Corporate Human Resources told her to "put a stop to any further complaints" and that if they wanted to complain "they know where the door is." *Id.* He asserts

ORDER ON DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM - 3

that he was not promoted in July 2018, despite having been given the impression that he was the top candidate. *Id.*

The Complaint alleges that on July 28, 2018, a meeting was held between the Plaintiff, General Manager Miracle, and Assistant General Manager, Nick Licastro. Dkt. 1-1, at 16-17. The Plaintiff maintains that he politely disagreed with them on an issue. *Id.,* at 17. He asserts that they went to human resources and said that, "he would regret being mean" to them. *Id.*

On August 14, 2018, the Complaint asserts that the Plaintiff met with Miracle and Licastro. Dkt. 1-1, at 17. They are alleged to have told him that other employees are talking about his affair with Ms. Herbert and that they believed that he was having an affair with Ms. Herbert. *Id.* He maintains that he was told that while it was not against company policy, it reflected poorly on he and Ms. Herbert because they were both married. *Id.* The Plaintiff repeatedly denied the affair. *Id.,* at 18. The Plaintiff alleges that they told him they had reports of the Plaintiff and Ms. Herbert talking in the hall, and that he should avoid her in the future. *Id.* The Plaintiff felt it would impede his ability to do his job if he were to avoid Ms. Herbert in the future. *Id.* He asserts that he felt singled out and harassed because other co-workers rode in cars together and had closed-door meetings. *Id.*

The Complaint asserts that on August 15, 2018, he filed a second complaint with human resources concerning the previous day's meeting, claiming that he was being subjected to a "hostile work environment," slander, and liable. *Id.*, at 19. He alleges that a few days later, Ms. Herbert was told by a co-worker that General Manager Miracle and Assistant General Manager Licastro told the co-worker to report it any time she saw Ms. Herbert and the Plaintiff talking. *Id.*

On August 23, 2018, the Plaintiff met with human resources. Dkt. 1-1, at 20. He asserts that they told him that the conversation with Miracle and Licastro was intended to be informative, not punitive. *Id.* The Plaintiff maintains that they asked if he was happy at Great Wolf and he asserts that he told them he was not and was looking for other employment. *Id.* The Plaintiff told them he hired a lawyer. *Id.* He alleges that they got defensive. *Id.* On August 29, 2018, Plaintiff's lawyer sent Great Wolf a letter of representation and for evidence preservation. *Id.*, at 21.

On September 19, 2018, the Plaintiff met with Assistant General Manager Licastro and staff from human resources. Dkt. 1-1, at 22. The general manager was not present. *Id.* He was given a performance improvement plan ("PIP") for events he alleges were either falsified or were knowingly misconstrued because they were not raised by management at the time they occurred and were being used as an attempt to "add bogus negative performance to his personnel file. *Id.* He asserts that he was also given a confidential severance agreement and release. *Id.* Plaintiff alleges he was told to take a day off and decide whether to agree to the PIP, which would last 45-days, or take the severance. *Id.*

The Plaintiff sent an email the next day to human resources, attached his employment contract, and stated that he wanted to discuss his PIP with General Manager Miracle, his supervisor, as provided in the employment contract. Dkt. 1-1, at 22. Human Resources staff responded, let him know that General Manager Miracle approved the PIP, and that it would be in place even before he signed it. *Id.,* at 23. A meeting was set for September 26, 2018. *Id.* The Plaintiff's lawyer let Great Wolf know that he would not accept the severance and wanted to remain employed. *Id.*

ORDER ON DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM - 5

According to the Complaint, on September 26, 2018, the Plaintiff attended the meeting, provided a written point-by-point refutation of the PIP. Dkt. 1-1, at 23. Great Wolf discharged the Plaintiff that day. *Id.* He later learned it was for "poor work performance." Dkt. 1-1, at 8.

The Complaint alleges that:

> Defendant Great Wolf upper management orchestrated a calculated witch hunt against Plaintiff . . . based on preposterous lies, adding bogus reprimands to his previously sparkly personnel file MONTHS after Defendant Great Wolf claims the fabricated "poor work performance" occurred – all aimed at getting rid of their previously celebrated Rockstar employee, Plaintiff . . . who had the audacity to report safety concerns he discovered on Defendant Great Wolf's property. Safety concerns that put in danger the safety of Defendant Great Wolf employees, vendors and guests (the majority of which are families with young children) and thus are clearly an issue of interest to public policy.

Dkt. 1-1, at 25. The Plaintiff makes a single claim for discharge in violation of public policy under Washington law. Dkt. 1-1. He seeks damages, attorneys' fees and costs. *Id.*

**B. PENDING MOTION**

After this case was removed from Pierce County Washington Superior Court, Great Wolf moved to dismiss the case, arguing that Plaintiff has failed to state a claim for discharge in violation of public policy because he has not alleged facts to support (1) a clear mandate of public policy, (2) a causal connection between the protected activity and his discharge, or (3) misconduct by Great Wolf. Dkt. 9.

The Plaintiff opposes the motion and argues that (1) Washington has a clear public policy regarding safety reports, (2) the Complaint alleges facts showing that Plaintiff's report of Milani's vandalism and property damage/safety issue was connected to his discharge, and (3) there is no requirement under Washington law that the misconduct reported by the Plaintiff be attributable to Great Wolf. Dkt. 17.

Great Wolf has filed a Reply (Dkt. 20) and the motion is ripe for consideration.

ORDER ON DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM - 6

## II. DISCUSSION

### A. STANDARD FOR MOTION TO DISMISS

Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*, at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.*, at 547.

Dismissals under Rule 12(b)(6) for failure to state a claim should ordinarily be without prejudice. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003). "Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Id.*

### B. WASHINGTON SUBSTANTIVE LAW APPLIES

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction, as here, apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no

convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'" *Vestar Dev. II, LLC v. Gen. Dynamics Corp.,* 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996) *(internal quotation marks omitted)*).

### C. DISCHARGE IN VIOLTION OF PUBLIC POLICY CLAIM

The tort of wrongful discharge was adopted in Washington as "a narrow exception" to the at-will employment doctrine. *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 232-33 (1984). Generally, the claim for discharge in violation of public policy has been limited to four situations:

> (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing.

*Gardner v. Loomis*, 128 Wn.2d 931, 936 (1996)(*internal citation omitted*). To maintain this claim, a Washington Plaintiff must allege that: (1) their "discharge may have been motivated by reasons that contravene a clear mandate of public policy," and (2) "the public-policy-linked conduct was a significant factor in the decision to discharge" them. *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 723-25 (2018).

This case does not fit neatly into any of the four usual categories. There is no allegation that the Plaintiff was fired for failing to commit an illegal act, for performing a public duty, or for exercising a legal right or privilege. There is no allegation that he was fired for whistleblowing - reporting misconduct on the part of Great Wolf.

When a case, like this one, does not fit neatly into one of the four "usual" categories, Washington courts use a test, called the Perritt test, which considers the following four factors:

ORDER ON DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM - 8

> (1) The plaintiffs must prove the existence of a clear public policy (the clarity element). (2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the jeopardy element). (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the causation element). (4) The defendant must not be able to offer an overriding justification for the dismissal (the absence of justification element).

*Martin,* at 723 (*internal citation omitted*).

Regardless of which test is used, Great Wolf argues that the Plaintiff's Complaint should be dismissed because he fails to allege two elements the tests have in common – that there be a clear public policy and that the public-policy-linked conduct caused the dismissal. Each will be examined below. The Court will not reach Great Wolf's third ground for dismissal – that the Plaintiff failed to allege wrongdoing on the part of Great Wolf because it finds for Great Wolf on the other two grounds.

### 1. Clear Public Policy

"The question of what constitutes a clear mandate of public policy is one of law and can be established by prior judicial decisions or constitutional, statutory, or regulatory provisions or schemes." *Martin*, at 725; *Thompson,* at 232. "To qualify as a public policy for purposes of the wrongful discharge tort, a policy must be truly public and sufficiently clear." *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 208 (2008)(*citing Dicomes v. State*, 113 Wash.2d 612, 618 (1989)("[P]ublic policy concerns what is right and just and what affects the citizens of the State collectively.").

Great Wolf's motion to dismiss the Complaint (Dkt. 9) should be granted without prejudice. The Plaintiff's Complaint alleges that "[t]he clear public policy is that Great Wolf employees have a duty to report to Great Wolf onsite workplace vandalism and property destruction, especially when (like here) these instances pose a safety concern for resort

guests/customers." Dkt. 1-1, at 32. The Plaintiff fails to point to a clear mandate of public policy which was established by "prior judicial decisions or constitutional, statutory, or regulatory provisions or schemes." *Martin*, at 725. In his response, the Plaintiff asserts that the public policy can be synthesized from a number of laws. Dkt. 17, at 4. He then argues that Great Wolf has "specific policies mandating the reporting of safety issues such as vandalism and property destruction." *Id.* The Plaintiff maintains that he was following those policies when he reported Milani's vandalism and damage to the wall. *Id.* He argues that "[t]hese safety policies, while being those of the Defendant and not those specifically of the state of Washington, are clearly matters of public concern." *Id.*

The Plaintiff fails to identify the law or groups of laws from which he supposedly draws a clear public policy. His argument that Great Wolf's reporting policies should be equated with policy drawn from the constitution, statutes, regulatory schemes, or case law is without citation to authority. To equate an employer's policies, even policies asserted to relate to safety, without being grounded in discernable public policy, would greatly expand Washington courts' "narrow exception" to the at-will employment doctrine. "Without roots in regulation or judicial precedent," an employer's reporting policies do not constitute a clear mandate of public policy. *Martin*, at 725. The Plaintiff fails to meet this requirement.

### 2. Public-Policy-Linked Conduct Caused the Dismissal

At this step, a "plaintiff must first establish a prima facie case by producing evidence that the public-policy-linked conduct was a cause of the firing, and may do so by circumstantial evidence." *Martin,* at 725 (*internal quotation marks and citations omitted*). If the plaintiff succeeds in establishing a prima facie case, "the burden then shifts to the employer to articulate a legitimate nonpretextual nonretaliatory reason for the discharge." *Id.,* at 725-26. "If the
ORDER ON DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM - 10

employer articulates such a reason, the burden shifts back to the plaintiff either to show that the reason is pretextual, or by showing that although the employer's stated reason is legitimate, the public-policy-linked conduct was nevertheless a substantial factor motivating the employer to discharge the worker." *Id.,* at 726.

Even if compliance with its' reporting policies were clearly mandated by public policy, Great Wolf argues that the Plaintiff fails to allege sufficient facts to support a prima facia case – to show that his reporting was a cause of his firing. Dkt. 9. It maintains that the eight-month gap between the report and his discharge is too tenuous to support an inference that the report was a substantial factor motivating his discharge. *Id.*

The Plaintiff responds and argues that he is not relying on the time frame, but the following facts that he asserts support the inference that his report caused his discharge. Dkt. 17, at 6. The Plaintiff points out that right after he reported her, Milani retaliated against the Plaintiff by reporting him to human resources for "objectifying women." *Id.* When that did not result in his discipline, he notes that Milani then circulated rumors about his having an affair with Herbert, did an unauthorized audit on him, gave his personal contact information to Mr. Herbert, attacked him on social media and encouraged her friends at work to do the same. *Id.,* at 6-7. The Plaintiff asserts that after he made his supervisors aware of Milani's behavior, they failed to take action. *Id.,* at 7. He maintains that even after Milani's discharge in March of 2018, his supervisors continued to act on Milani's rumors and singled him out to ensure he was not alone with a person of the opposite sex and counseled him to avoid Herbert. *Id.* The Plaintiff alleged that, after he filed two complaints with human resources about his supervisors' actions, no action was taken. *Id.* He asserts that despite favorable performance reviews after his report (which occurred after Milani's termination), he was presented with a PIP which was based on

events that were not raised by management at the time of occurrence or were false or were knowingly misconstrued to add negative performance to his work file. *Id.* He argues that Great Wolf's ignoring his report and retaliating against him "coupled with the human resources complaint against the treatment he was receiving by terminating him jeopardizes public policy because it creates a 'chilling effect' on Defendant's employees, discouraging them from following company policy raising safety concerns without fear." *Id.,* at 9.

Great Wolf's motion to dismiss the Complaint (Dkt. 9) should be granted without prejudice. The Plaintiff fails to allege sufficient facts connecting his report with his discharge. The Plaintiff acknowledges that after he made the report and Milani was fired, he received a positive work evaluation. Further, the timeframe between the report and his discharge was too removed to support an inference of causation. *See e.g. Clark Cty. Sch. Dist. V. Breeden,* 532 U.S. 268, 273-74 (2001)(holding gap of three or four months is too long to infer causation). The Plaintiff fails to allege sufficient facts that his report of Milani's vandalism and alleged unsafe destruction of property was a substantial factor in his discharge.

### D. CONCLUSION

Great Wolf's motion to dismiss (Dkt. 9) should be granted without prejudice. The Plaintiff's sole claim, for discharge in violation of public policy, should be dismissed without prejudice. The Plaintiff refers to a hostile work environment, slander, liable and other issues in his Complaint, but does not expressly list them in his "claims" section and does not reference them in his response to the motion to dismiss. The Court cannot say it is not at all possible that the Plaintiff can correct the defects in his Complaint; according, leave to amend should be granted. The Plaintiff should be given leave to file an amended complaint, if he wishes, on or before July 28, 2019.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- The Defendant's 12(b)(6) Motion to Dismiss for Failure to State a Claim (Dkt. 9) **IS GRANTED WITHOUT PREJUIDCE**; and

- The Plaintiff **IS GRANTED** leave to file an amended complaint, if he wishes on or before **July 28, 2019**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 1st day of July, 2019.

ROBERT J. BRYAN
United States District Judge