UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEREMY DE JONG,

                Plaintiff,

v.

GREAT WOLF RESORTS, INC., d.b.a. GREAT WOLF LODGE,

                Defendant.

CASE NO. 19-5354 RJB

ORDER ON DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

This matter comes before the Court on the Defendant Great Wolf Resorts, Inc.'s ("Great Wolf") Motion to Dismiss First Amended Complaint. Dkt. 25. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

In this diversity case, the Plaintiff claims that Great Wolf created, perpetuated, and failed to address, a hostile work environment, based on his sex/gender, and retaliated against him by terminating his employment all in violation of the Washington Law Against Discrimination, RCW § 49.60, *et seq*., ("WLAD"). Dkt. 22. The only claim in the original Complaint, termination in violation of public policy, was dismissed on July 1, 2019, without prejudice, in part, for failure to allege facts to show that the public-policy linked conduct caused his dismissal.

ORDER ON DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 1

Dkt. 21. The Plaintiff, with leave of court, filed the Amended Complaint. Dkt. 22. Great Wolf (who asserts that the Plaintiff improperly names it as the Defendant, and not Plaintiff's real employer, Great Lakes Services, LLC), now moves to dismiss the case, arguing that the Plaintiff fails to allege that the harassment occurred because of his sex/gender or that there was a causal connection between the Plaintiff's discharge and his purported protected activity. Dkt. 23. For the reasons provided below, the motion (Dkt. 23) should be denied.

## I.     FACTS AND PROCEDURAL HISTORY

### A. FACTS

The following facts are from the Plaintiff's First Amended Complaint and are presumed true for the purposes of this motion.

The Plaintiff was hired to work at Great Wolf, a hotel and inside water park, on October 25, 2017, as the Director of Engineering. Dkt. 22, at 9. Prior to the events that give rise to this action, he alleges that he met or exceeded performance goals and received only positive performance reviews. *Id.*, at 8-9.

The First Amended Complaint asserts that on January 23, 2018, the Plaintiff reported to Great Wolf management that a co-worker, Marilyn Milani, the Director of Rooms, "wrote various graffiti on an interior wall and then destroyed it." Dkt. 22, at 10. He did so by text message to Human Resources Manager Tawni Houk and included pictures, which appear in the First Amended Complaint. *Id.,* at 10-11. The picture is of a wall with writing on it and portions of the drywall and insulation torn way. *Id.,* at 11. The next day, Milani emailed the Plaintiff, "stating that she had begun destructively tearing the wall down in housekeeping via her pack ritual but did not plan on encountering insulation and metal." *Id*. The First Amended Complaint maintains that she then asked the Plaintiff to "schedule someone to remove the wall." *Id*. The

Plaintiff asserts that he reported Milani's conduct a second time, this time to the General Manager, Nadine Miracle. *Id.*

The First Amended Complaint alleges that in retaliation for the Plaintiff's reports, on January 26, 2018, Milani reported to human resources that the Plaintiff "objectified women." Dkt. 22, at 12. He asserts that when he pointed out that the timing of her complaint was suspicious, Miracle and Houk stated that due to the nature of Milani's claims, they would not treat the report as retaliatory. *Id.*

The First Amended Complaint alleges that when he was not disciplined as a result of Milani's claim, Milani began a rumor that he was having an affair with another married co-worker, Herbert. Dkt. 22, at 11. He maintains that Miracle went to Houk and inquired as to whether they should contact the police to investigate because "in Pennsylvania where [Miracle] was from, adultery is illegal." *Id.* at 12. The Plaintiff asserts that he did not have the affair. *Id.* Milani is alleged to have then "ran an unauthorized audit through the workplace computer system on Plaintiff [and Herbert]" and gave his personal contact information to Herbert's husband. *Id.* The Plaintiff asserts that Milani continued to defame and harass him on social media. *Id.,* at 13. He asserts that other of Milani's friends at work also harassed him by making unwelcome sex-based comments. *Id.,* at 13. Plaintiff states that Milani was increasingly hostile to him, would not communicate with him, and made it very difficult to do his job due to the interrelated nature of their duties. *Id.*, at 14. The Plaintiff reported Milani's behavior, but he asserts that General Manager Miracle indicated that she disagreed that any such behavior was occurring. *Id.* In March of 2018, Milani was discharged. Dkt. 22, at 15.

The First Amended Complaint alleges that the Plaintiff's performance evaluation for April 2018 indicated that he "consistently meets" goals and work expectations and that his overall performance was "strong contributor." Dkt. 22, at 15-16.

In early June 2018, Plaintiff and a few other employees headed to Seattle to participate in a work-related program. Dkt. 22, at 15. The Plaintiff alleges that he left with Ms. Herbert, but that

ORDER ON DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 3

after they left, they received a call from General Manager Miracle that they were to wait on the side of the road for her. *Id,* at 16. Plaintiff asserts that Miracle forced him to ride with her. *Id.* When asked why, the Plaintiff maintains that Miracle told him, "boys and girls should not ride alone in cars together." *Id.,* at 17.

Both Ms. Herbert and the Plaintiff filed complaints with human resources regarding this episode. Dkt. 1-1, at 17. Plaintiff maintains that their "complaints detailed how their boss, GM Miracle, believed the sexual harassment perpetrated by Ms. Milani." *Id.* On June 28, 2018, the Plaintiff asserts that he asked Human Resources Manager Houk about the status of his complaint. *Id.* He maintains that Houk told him that Bryan Robinson of Corporate Human Resources told her to "put a stop to any further complaints" and that if they wanted to complain "they know where the door is." *Id.* He asserts that he was not promoted in July 2018, despite having been given the impression that he was the top candidate. *Id.,* at 18.

The First Amended Complaint alleges that on July 24, 2018, a meeting was held between the Plaintiff, General Manager Miracle, and Assistant General Manager, Nick Licastro. Dkt. 22, at 18. The Plaintiff maintains that he politely disagreed with them on an issue. *Id*. He asserts that they went to human resources and said that, "he would regret being mean" to them. *Id.*

The First Amended Complaint asserts that the Plaintiff met with Miracle and Licastro on August 14, 2018. Dkt. 22, at 19. They are alleged to have then told him that other employees are talking about his affair with Ms. Herbert and that they believed that he was having an affair with Ms. Herbert. *Id.* He maintains that he was told that while it was not against company policy, it reflected poorly on him and Ms. Herbert because they were both married. *Id.* The Plaintiff repeatedly denied the affair. *Id.* The Plaintiff asserts that he "reiterated that the group of employees harassing him are very close friends outside of work with Ms. Milani, the woman who was fired after Plaintiff [] reported the vandalism." *Id.* The Plaintiff alleges that they told

him they had reports of the Plaintiff and Ms. Herbert talking in the hall, and that he should avoid her in the future. *Id.,* at 20. The Plaintiff felt it would impede his ability to do his job if he were to avoid Ms. Herbert in the future. *Id.* He asserts that he felt singled out and harassed because other male and female co-workers rode in cars together and had closed-door meetings. *Id.*

The First Amended Complaint asserts that on August 15, 2018, he filed a second complaint with human resources concerning the previous day's meeting, claiming that he was being subjected to a hostile work environment, sexual harassment, and the meeting the day before exhibited that the "belief of the rumors by his co-workers and especially his bosses had become so pervasive as to alter and impede his ability to perform the duties of his position." Dkt. 22, at 20. He alleges that a few days later, Ms. Herbert was told by a co-worker that General Manager Miracle and Assistant General Manager Licastro told the co-worker to report to them any time she saw Ms. Herbert and the Plaintiff talking. *Id.,* at 21.

On August 23, 2018, the Plaintiff met with human resources. Dkt. 22, at 20. He asserts that they told him that the conversation with Miracle and Licastro was intended to be informative, not punitive. *Id.* The Plaintiff maintains that they asked if he was happy at Great Wolf and he asserts that he told them he was not and was looking for other employment. *Id.* The Plaintiff told them he hired a lawyer. *Id.,* at 22. He alleges that they got defensive. *Id.* On August 29, 2018, Plaintiff's lawyer sent Great Wolf a letter of representation and for evidence preservation. *Id.*, at 23.

On September 19, 2018, the Plaintiff met with Assistant General Manager Licastro and staff from human resources. Dkt. 22, at 23. The general manager was not present. *Id.* He was given a performance improvement plan ("PIP") for events he alleges were either falsified or were knowingly misconstrued because they were not raised by management at the time they occurred.

*Id.* He asserts that he was also given a confidential severance agreement and release. *Id.* Plaintiff alleges he was told to take a day off and decide whether to agree to the PIP, which would last 45-days, or take the severance. *Id.*

The Plaintiff sent an email the next day to human resources, attached his employment contract, and stated that he wanted to discuss his PIP with General Manager Miracle, his supervisor, as provided in the employment contract. Dkt. 22, at 24. Human Resources staff responded, let him know that General Manager Miracle approved the PIP, and that it would be in place even before he signed it. *Id.* A meeting was set for September 26, 2018. *Id.* The Plaintiff's lawyer let Great Wolf know that he would not accept the severance and wanted to remain employed. *Id.*

According to the First Amended Complaint, on September 26, 2018, the Plaintiff attended the meeting, provided a written point-by-point refutation of the PIP. Dkt. 22, at 25. Great Wolf discharged the Plaintiff that day. *Id.* He later learned it was for "poor work performance." Dkt. 22, at 9.

The First Amended Complaint alleges that:

> Defendant Great Wolf upper management orchestrated a calculated witch hunt against Plaintiff . . . based on preposterous lies, adding bogus reprimands to his previously sparkly personnel file MONTHS after Defendant Great Wolf claims the fabricated "poor work performance" occurred – all aimed at getting rid of their previously celebrated rockstar employee, Plaintiff . . . who had the audacity to report safety concerns he discovered on Defendant Great Wolf's property. Safety concerns that put in danger the safety of Defendant Great Wolf employees, vendors and guests (the majority of which are families with young children).

Dkt. 22, at 27. The Plaintiff makes two WLAD claims: (1) sexual harassment, in the form of a hostile work environment, and (2) retaliation. Dkt. 22. He seeks damages, attorneys' fees and costs. *Id.*

B. **PENDING MOTION**

After the First Amended Complaint was filed, Great Wolf moved to dismiss the case, arguing that Plaintiff has failed to state a claim for hostile work environment or retaliation because he did not sufficiently plead that the alleged harassment occurred because of his sex or gender. Dkt. 23. It additionally moved to dismiss Plaintiff's retaliation claim asserting that the Plaintiff failed to allege sufficient facts from which to conclude that there was a causal connection between the Plaintiff's discharge and his protected activity. *Id*.

The Plaintiff opposes the motion. Dkt. 25. Great Wolf has filed a Reply (Dkt. 26) and the motion is ripe for consideration.

II. **DISCUSSION**

A. **STANDARD FOR MOTION TO DISMISS**

Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*., at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*., at 547.

Dismissals under Rule 12(b)(6) for failure to state a claim should ordinarily be without prejudice. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003). "Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Id.*

### B. WASHINGTON SUBSTANTIVE LAW APPLIES

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction, as here, apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'" *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996) *(internal quotation marks omitted)*).

### C. HOSTILE WORK ENVIRONMENT CLAIM

The WLAD prohibits employer discrimination based on "sex." RCW 49.60.180(3). The statute provides that "sex means gender." RCW 49.60.040 (25). To establish a prima facie hostile work environment claim case under the WLAD, a plaintiff must show that, because of their sex, they were subjected to unwelcome conduct "that was sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment," and was imputable to the employer. *Campbell v. Hawaii Dep't. of Educ.*, 892 F.3d 1005, 1007 (9th Cir. 2018)(*internal quotation marks and citations omitted*); *Loeffelholz v. Univ. of Washington*, 175 Wash. 2d 264, 274 n.1 and 275 (2012)(*noting* that Washington courts have traditionally found federal case law persuasive and use the same prima facie case).

Great Wolf argues that the Plaintiff has failed to allege sufficient facts that the harassment occurred "because of" Plaintiff's sex. Dkt. 23.

In determining whether harassment is "because of sex," "the question to be answered here is: would the employee have been singled out and caused to suffer the harassment if the employee had been of a different sex? This statutory criterion requires that the gender of the plaintiff-employee be the motivating factor for the unlawful discrimination." *Glasgow v. Georgia-Pac. Corp.*, 103 Wn.2d 401, 406 (1985). "That the Legislature intended the word 'sex' to mean a classification rather than activity of a sexual nature generally is apparent from its placement in a list of other classifications according to which human beings can be characterized, e.g., age, race, color, creed, marital status, and national origin." *Doe v. State, Dep't of Transp.*, 85 Wn. App. 143, 149 (1997).

Great Wolf's motion to dismiss the Plaintiff's claim for hostile work environment based on sex/gender should be denied. The Plaintiff alleges that the first allegation leveled at him was that he "objectified women," and after that did not work, became rumors about him having an affair with a married woman. A reasonable inference is that the rumors were circulated to continue the notion that he was a womanizer. While the case is thin, the Plaintiff has alleged sufficient facts to show that he would not have been treated the same way had he been a woman.

### D. RETALIATION CLAIM

To make a claim for retaliation under the WLAD, plaintiffs must show (1) they engaged in a protected activity, (2) an adverse employment action occurred and (3) a causal link between the two. *Milligan v. Thompson*, 110 Wash.App. 628, 42 P.3d 418, 424 (2002); *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

Great Wolf's motion to dismiss Plaintiff's retaliation claim should be denied. There is no dispute that an adverse employment action was taken – the Plaintiff's employment was terminated.

Great Wolf moves to dismiss this claim by arguing that Plaintiff does not sufficiently plead the first element - that he engaged in a protected activity because Plaintiff could not have reasonably believed that he was being harassed because of his sex/gender when he made reports to that effect. Dkt. 23.

Opposing sexual harassment is a protected activity under the WLAD. RCW 49.60.210. To show that a plaintiff engaged a "statutorily protected activity" under the WLAD, a plaintiff need only prove that their "complaints went to conduct that was at least arguably a violation of the law, not that [their] opposition activity was to behavior that would actually violate the law against discrimination." *Estevez v. Faculty Club of Univ. of Washington*, 129 Wn. App. 774, 798 (2005).

The Plaintiff has alleged sufficient facts that his complaints of sexual harassment went to conduct that was at least arguably a violation of the WLAD. The Plaintiff complained that about being accused of "objectifying" women and that nothing was done about rumors being spread that he was engaged in an affair with a married woman. The Plaintiff complained about being mistreated because of the rumors. He asserted that his supervisors continued to act on the rumors and singled him out to ensure he was not alone with a person of the opposite sex and counseled him to avoid Ms. Herbert. He alleges that his supervisors asked others to report on his activities with Ms. Herbert. At this early stage in the litigation, his pleading is sufficient to show the conduct about which he complained is arguably a violation of the WLAD.

ORDER ON DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 10

Great Wolf also argues that the claim should be dismissed because he failed to plead the third element of a retaliation claim - a causal connection between his complaints and the adverse employment actions. Dkt. 23.

"An employee proves causation by showing that retaliation was a substantial factor motivating the adverse employment decision." *Cornwell v. Microsoft Corp.*, 192 Wn.2d 403, 412 (2018). "Employees may rely on the following facts to show this: (1) the employee took a protected action, (2) the employer had knowledge of the action, and (3) the employee was subjected to an adverse employment action." *Cornwell*, at 413.

As above, the Plaintiff has alleged sufficient facts to show, at least at this stage of the litigation, that he took protected action. Moreover, Great Wolf had actual knowledge of his reports. The Plaintiff alleges that his managers were aware he complained to the human resources department multiple times that he was being sexually harassed. It is undisputed that he was subjected to an adverse employment action (termination) in less than a month and a half after his last formal complaint of sexual harassment. In the July 1, 2019 Order dismissing the original Complaint's claim for termination in violation of public policy, the undersigned found that the almost nine-month gap between the Plaintiff's report of Ms. Malini's vandalism and the termination of his employment was not close enough in time to find that that report was the cause of his termination. The gap between his last report of sexual harassment is much smaller - less than 90 days. "That an employer's actions were caused by an employee's engagement in protected activities may be inferred from proximity in time between the protected action and the allegedly retaliatory employment decision." *Cornwell*, at 416 (*internal quotation marks and citations omitted*). Great Wolf's motion to dismiss the retaliation claim should be denied.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- The Defendant's Motion to Dismiss First Amended Complaint (Dkt. 23) **IS DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 9th day of September, 2019.

*Robert J. Bryan* (signature)

ROBERT J. BRYAN
United States District Judge